## Case No. 5,011.

### FOX v. HEMPFIELD R. CO.

[2 Abb. U. S. 151; [1] 13 Int. Rev. Rec. 23; 8 Phila. 639; 28 Leg. Int. 4; 3 Pittsb. Rep. 289; 18 Pittsb. Leg. J. 148.]

Circuit Court, W. D. Pennsylvania. Dec. 27, 1870.

Burgwin & Shiras, for the motion.
Kirker & Schoyer, opposed.

McCANDLESS, District Judge. On November 23, 1860, the plaintiff obtained in this court two several judgments against the Hempfield Railroad Company. amounting now, in the aggregate, to a sum exceeding seventy thousand dollars.

These judgments were subsequently revived, and a fi. fa. issued, by virtue of which the marshal, on October 12, made a levy upon the road, its rolling stock and franchises, and all its property, real and personal.

The road was chartered by Pennsylvania. to run from Greensburg, in Westmoreland county, to a point on the western boundary of the state, and Virginia granted a similar charter, so as to make a continuous road from Greensburg to Wheeling. The road has only been completed and operated from Wheeling. in the state of Virginia, to Washington, in the state of Pennsylvania.

A motion is now made to set aside the execution and the levy for several reasons assigned. to two of which it is alone necessary to refer.

It is contended, and the point is well taken, that this levy under the act of 1870 [Laws Pa. 58], has been prematurely and illegally made. This supplementary act. which I hesitated to adopt as part of the process of this court, because of the sharpness of its practice, is amendatory of section

[2] [From 1 Pittsb. Rep. 372.]
[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

72 of the act of 1836 [Laws Pa. 774]. It provides that in addition to the provisions of the seventy-second section, and in lieu of the proceeding by sequestration, the plaintiff may have execution by fi. fa., commanding the officer to levy the sum due of any personal, real, or mixed property, franchises, and rights of the corporation, and proceed to sell the same. It does not repeal any of the preliminaries, before levy and sale, required by section 72 in proceeding against a corporation, but it is "in addition" thereto. What is necessary to be done before you arrive at the point of sequestration, for which this process is designated to be a substitute? Section 72 provides that executions against corporations shall be executed in the following manner: The officer shall go to the principal office of the corporation during the usual office hours, and demand of the president, or other officer having charge of such office, the amount of such execution, with legal costs. If no person can be found on whom demand can be made, or if the amount be not forthwith paid after demand be made, the officer shall seize the personal property of the corporation sufficient to satisfy the debt. If no sufficient personal property be found, the officer shall levy upon the real estate of the corporation and proceed as in other cases for the sale of land. When the execution issued is returned unsatisfied, in whole or in part, then begin the proceedings by sequestration, which the supplementary act of 1870 was designed to supplant. This course of proceeding divests the statute of many sharp features which render it obnoxious to criticism, and affords the corporation ample notice of its peril, before its property and valuable franchises can be seized and sold. For it will be remembered that this levy and sale is in addition to the provisions of section 72, and was intended to relieve the creditor and the courts of the cumbrous machinery of sequestration, which was found inadequate to meet the exigency of the case. As none of these essential preliminaries have been complied with, this levy must be set aside.

Here we arrive at a consideration of graver consequence, which goes to the merits of the question submitted. Shall we, by the process of the courts of the United States, interfere with a court of competent jurisdiction, which has already assumed the control and custody of the whole property of the corporation? Conflicts of jurisdiction are to be avoided as well from necessity as from comity.

On the 27th of June, 1855, the Hempfield Railroad Company executed a mortgage to certain trustees, which, with its supplements, was given to secure the payment of the bonds of the company to the amount of one million dollars. Interest in a sum exceeding three hundred thousand dollars having accrued upon these bonds, the bondholders filed their bill in the supreme court of Pennsyl-

vania, praying for a foreclosure and sale of the mortgaged premises, and a distribution of the proceeds among the creditors of the corporation. After some delay and much litigation, in which the validity of the mortgage was called in question, that high court, on the 10th day of April, 1869, inter alia, decreed a sale of all the property and franchises of the company upon the 1st of March next, upon the failure to pay, on the 30th of the present month, the coupons ascertained to be due.

It was urged with much force at the argument, that the plaintiff decedent in this case being a contractor who had expended his time and labor in the construction of the road, by virtue of the act of 1843, the mortgage must be postponed, and as to him was utterly null and void.

Whatever may be the merits of his claim as to priority under the statute, the validity of this mortgage cannot be controverted in a collateral proceeding here or elsewhere. The judgment of the supreme court as to its binding force, whether this question as to the act of 1843 was raised or not, is conclusive upon this and all other courts. The plaintiff is at liberty to contest his priority yet, in that forum, upon the question of distribution. The fact that his claim has passed into judgment in a court of the United States, does not deprive him of the rights of a creditor in the tribunals of the state.

The supreme court of Pennsylvania having, by its decree and authorized officers, taken judicial control of the property and franchises of this corporation, and ordered their sale, they cannot be taken in execution by process from any other jurisdiction. Mr. Justice McLean, in [Hagan v. Lucas] 10 Pet. [33 U. S.] 401, says, the first levy, whether it was made under the federal or state authority, withdraws the property from the reach of the process of the other. A most injurious conflict of jurisdiction would be likely often to arise between the federal and state courts, if the final process of the one could be levied on property which had been taken by the process of the other. Property once levied on remains in the custody of the law, and is not liable to be taken by another execution in the hands of a different officer, and especially by an officer acting under a different jurisdiction. Similar doctrine is held in [Williams v. Benedict] 8 How. [49 U. S.] 107; [Wiswall v. Sampson] 14 How. [55 U. S.] 52, 374; and in [Marks v. Dickson] 20 How. [61 U. S.] 503. Judge Agnew, also, in Robinson v. Atlantic & G. W. Ry. Co. [66 Pa. St. 160], adheres to the same rule. And as it will be borne in mind that a part of the property levied on in the present case is in the state of Virginia, and beyond our territorial jurisdiction, we may adopt his language, that "if the property may be taken piecemeal, the remedy of the creditors under the mortgage

would become worthless, or at least greatly imperiled."

The fi. fa. having regularly issued to collect the fruits of the judgment, although wanting in the preliminaries to the levy for its proper execution. it may be said there is no good reason why the court should recall it. But, as pending the decree of the supreme court, the plaintiff can take nothing, except litigation, by his writ, it is set aside.

Rule absolute, and the levy and execution set aside.